## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HELEN and THOMAS DELANEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| SPECIALIZED LOAN SERVICING, | ) | File No. |
| LLC; NATIONSTAR MORTGAGE, | ) | |
| LLC; and STRUCTURED | ) | JURY TRIAL DEMANDED |
| ADJUSTABLE RATE MORTGAGE | ) | |
| LOAN TRUST, MORTGAGE PASS- | ) | |
| THROUGH CERTIFICATES, SERIES | ) | |
| 2005-16XS, | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs, THOMAS AND HELEN DELANEY, by the undersigned attorneys, complain of SPECIALIZED LOAN SERVICING, LLC, NATIONSTAR MORTGAGE, LLC, and STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-16XS (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiffs HELEN AND THOMAS DELANEY (collectively "Delaney") bring this action for damages for breach of contract, and for violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), and the Truth in Lending Act ("TILA").

2. All of the claims stated herein stem from the wrongful servicing and debt collection activities related to Delaney's residential mortgage loan.

**JURISDICTION AND VENUE**

3.   Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 1692k (FDCPA), 12 U.S.C. § 2614 (RESPA), and 15 U.S.C. § 1640 (TILA), as the action arises under the laws of the United States. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the subject property is in this District and the events occurred in this District.

4.   Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000.00 and is between citizens of different states.

**PARTIES**

5.   Plaintiffs Helen and Thomas Delaney are natural persons that own property located at 36216 N. Old Creek Ct., Gurnee, IL 60031 ("subject property"). Delaney originally purchased the subject property as their primary residence.

6.   Delaney has since moved from the subject property and are currently residents of South Carolina. The property at issue in this lawsuit is located in Illinois and the acts complained of occurred in Illinois.

7.   Defendant SPECIALIZED LOAN SERVICING, LLC ("SLS") is a Colorado limited liability corporation with its principal place of business in Colorado. SLS is a foreign company and a creditor, lender, and servicer of mortgage loans across the country, including in the state of Illinois.

8.   SLS was the servicer of the mortgage loan through March 31, 2014. For some portion of the relevant time period, including on October 10, 2013, SLS was also the creditor of the loan.

9.   Defendant NATIONSTAR LOAN SERVICING, LLC ("Nationstar") is a Delaware corporation with its principal place of business in Texas. Nationstar is a foreign company in the

2

business of servicing loans and debt collection across the country, including in the state of Illinois.

10. Nationstar was the servicer of the mortgage loan beginning on April 1, 2014 through today.

11. Defendant STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST, MORTAGE PASS-THROUGH CERTIFICATES, SERIES 2005-16XS ("Structured") is a foreign corporation and creditor, owner, and investor of mortgage loans.

12. Structured is the current creditor of the subject loan and recently filed a foreclosure against the subject property.

### FACTS SUPPORTING CAUSE OF ACTION

13. On March 15, 2005, Delaney entered into a mortgage loan in the amount of $240,000.00 in favor of the original lender, Optima Mortgage Corporation, secured by the subject property. *See* Group Exhibit A attached hereto is a true copy of the mortgage and note.

14. Mrs. Delaney is the only obligor on the promissory note. *Id.*

15. Delaney made monthly payments on her home mortgage loan from its origination in 2005 into 2012.

16. Sometime after the loan's origination, servicing and/or ownership transferred to Bank of America ("BOA").

17. In 2012, Delaney defaulted on her monthly payment obligations.

18. Specifically, on October 24, 2012, BOA sent Delaney a notice that she was in default and owed $3,913.90 to bring the loan current. *See* Exhibit B attached is a true copy of the October 24, 2012 letter.

19. At the time, the Delaney's monthly Principal, Interest, and Escrow payment was approximately $1,920.00.  *Id.*

20. Thereafter, in November 2012, ownership and/or servicing rights to the subject loan transferred from BOA to SLS.

21. On January 17, 2013, Delaney submitted a loan modification application to SLS under the Making Home Affordable Program ("HAMP").

22. On January 25, 2013, SLS sent Delaney a "Notice of Default and Notice of Intent to Foreclose." *See* Exhibit C attached is a true copy of the January 25, 2013 letter. The letter further set forth that SLS was the "*current creditor to whom the debt is owed.*" *Id.*

23. On January 29 and 30, 2013, respectively, SLS acknowledged receipt of Delaney's HAMP application and requested additional documents, which Delaney promptly submitted.

24. On March 28, 2013, SLS offered Delaney a HAMP trial period payment modification ("TPP"), that required Delaney to do the following:

**What you need to do…**
To accept this offer, you must make new monthly "trial period payments." To qualify for a permanent modification, you must make the following trial period payments in a timely manner.

| Trial Period Payment# | Trial Period Payment Amount | Due Date – On or before |
|---|---|---|
| 1 | $1,039.13 | May 1, 2013 |
| 2 | $1,039.13 | June 1, 2013 |
| 3 | $1,039.13 | July 1, 2013 |

After all trial period payments are timely made and you have submitted all required documents, your mortgage would then be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.)…

*See* Exhibit D attached is a true copy of the March 28, 2013 offer letter and TPP.

25. Relying on the TPP and SLS's instructions, Delaney made all three TPP payments on time and in full. *See* Exhibit E attached hereto is a true copy of the loan pay history at pp. 4-6.

26. On April 30, 2013, Delaney made her first (May) TPP payment of $1,039.13 to SLS. *Id.*

4

27. On June 11, 2013, Delaney made her second (June) TPP payment of $1,039.13 to SLS. *Id.*

28. On July 1, 2013, Delaney made her third (July) TPP payment of $1,039.13 to SLS. *Id.*

29. All TPP payments were accepted by SLS and applied to Delaney's account. *Id.*

30. After Delaney made her three required TPP payments, SLS offered Delaney a permanent payment plan modification ("PPP"). *See* Exhibit F is a true copy of the offer letter and PPP.

31. On July 10, 2013, SLS sent Delaney PPP paperwork to sign and return. *Id.*

32. Delaney was instructed to sign and fax the paperwork back by the due date. Delaney faxed the PPP contract by the due date as instructed to the fax number listed on the PPP offer letter, fax #: (720) 241-7526. *Id.*

33. Accepting the PPP involved two steps, "Step 1," and "Step 2." *Id.*

34. Step 1 of the PPP required Delaney to do the following:

> **How to accept this offer:**
> **STEP 1        COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**
> To accept this offer, you must sign (or electronically sign) and return the Modification Agreement to us in the enclosed, pre-paid envelope (or electronically as previously agreed-upon) by July 31, 2013…

35. Step 2 required Delaney to continue to make her trial period payments on time. *Id.* at Offer Letter p. 1.

36. Step 2 specifically provided that if Delaney had complied with the TPP, that the TPP would automatically become a permanent modification with the same terms effective July 1, 2013, and that Delaney's first PPP payment was due August 1, 2013. *Id.* at Step 2, p. 2, ¶ 3.

37. The PPP was directly contingent upon Delaney's compliance with and payment under her TPP. For example, the PPP offer was dated July 10, 2013, but it was retroactively effective on July 1, 2013, the date that Delaney's third TPP payment was due. *Id.* at Step 2, p. 2.

38. Once Delaney made her TPP payments, her PPP payment schedule was as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 7/1/13 | $530.66 | $512.11 May Adjust | $1,042.77 May Adjust | 8/1/13 | 60 |
| 6 | 3.000% | 7/1/18 | $616.51 | May Adjust | May Adjust | 8/1/18 | 12 |
| 7-40 | 3.5000% | 7/1/19 | $661.01 | May Adjust | May Adjust | 8/1/19 | 408 |

*Id.*

39. Under the PPP, after the July 1, 2013 effective date, Delaney did not owe any (a) unpaid interest, (b) corporate advances, (c) principal, (d) prior deferred interest, or (e) prior deferred principal. *Id.* at p. 4 ¶ 3C.

40. Upon the effective date of the modification, or July 1, 2013, all remaining unpaid late charges would be waived, and any other unpaid amounts or arrearages, including unpaid or deferred interest, fees, escrow advances and other costs would be added to the principal balance and no longer considered past due. *Id.*

41. In reliance on the PPP, on August 9, 2013, Delaney made her first PPP payment of $1,042.77 to SLS. *See* Exhibit E at pp. 4-6.

42. On September 3, 2013, Delaney made her second PPP payment of $1,042.77 to SLS. *Id.*

43. SLS accepted both payments. *Id.*

44. On September 20, 2013, SLS sent Delaney a notice stating that SLS is, "*unable to complete your modification because you did not return the signed modification documents by the specified due date.*" *See* Exhibit G is a true copy of the September 20, 3013 letter.

45. Delaney immediately called SLS in response to the letter. SLS advised that the letter had been sent and the loan modification canceled because she had faxed the PPP documents to SLS, instead of mailing them. The SLS representative advised Delaney to mail the signed PPP to them as soon as possible.

46. On September 24, 2013, Delaney overnight mailed the signed PPP documents to SLS along with a RESPA Qualified Written Request ("QWR") stating that she had faxed the loan modification documents by the due date because "Step 1" of the PPP to allowed her to return the signed documents to SLS "electronically" via the fax number provided on the cover letter. *See* Exhibit H is a true copy of the QWR, proof of mailing, and receipt.

47. SLS received the mailed PPP and QWR the next day. *Id.*

48. The following day, September 26, 2013, SLS sent Delaney a letter stating that it had received her QWR and her request was currently under review. SLS promised to respond within 30 days. *See* Exhibit I a true copy of the September 26, 2013 letter.

49. On October 1, 2013, SLS sent Delaney a letter that it had validated the denial of her PPP because she had not properly submitted the documents. The letter did not include any additional information or explanation of why PPP documents were not properly submitted. *See* Exhibit J a true copy of the October 1, 2013 letter.

50. On October 10, 2013, SLS sent Delaney a "Notice of Default and Notice of Intent to Foreclose," stating that she owed $15,420.66, or approximately 14 loan modification payments, but Delaney had made all of her loan modification payments on time and SLS had accepted each one. *See* Exhibit K attached hereto is a true copy of the October 10, 2013.

51. On November 5, 2013, Delaney made her fourth loan modification payment of $1,042.77 to SLS, which SLS accepted. *See* Exhibit E.

7

52. On December 5, 2013, Delaney made her fifth loan modification payment of $1,042.77 to SLS, which SLS accepted. *See* Exhibit E.

53. On December 13, 2013, SLS offered Delaney another TPP, but one which increased Delaney's payments over 50% of the amount of monthly payments in the binding PPP that Delaney had executed and timely submitted to SLS. The new TPP increased Delaney's payments to $1,787.84 compared to her original PPP payment of $1,042.77. *See* Exhibit L is a true copy of the December 13, 2013 offer letter and modification.

54. In response, Delaney called SLS and disputed the increased loan modification payment over the phone because (a) she had already received and entered into a binding PPP with a modified payment amount of $1,042.77, and (b) SLS had accepted *every single payment* in that amount since the loan modification effective date.

55. On December 15, 2013, SLS sent Delaney another "Notice of Default and Intent to Foreclose" stating that she owed $17,199.20 to cure the default. This Notice did not recognize the binding PPP and Delaney's PPP payments. *See* Exhibit M is a true copy of the December 15, 2013 Notice.

56. SLS continued to send Delaney monthly statements that were in conflict with the terms of the PPP, but referenced SLS cashing all of Delaney's loan modification payments.

57. The statements also indicated that SLS was assessing late fees, property preservation fees, and other fees associated with a purported loan default.

58. In April 2014, SLS transferred servicing of the subject loan to defendant Nationstar, but did not provide a RESPA Notice of Transfer of Servicing to Delaney. Delaney never received, and SLS never sent a RESPA Notice of Transfer of Servicing to Delaney.

59. On April 14, 2014, Nationstar sent Delaney its own RESPA Notice of Transfer of Servicing stating that, effective April 1, 2014, servicing of the loan transferred from SLS to Nationstar. *See* Exhibit N is a true copy of Nationstar's RESPA Notice of Transfer.

60. The April 14, 2014 letter was Nationstar's initial communication to Delaney. *Id.*

61. Delaney never received and Nationstar never sent a 30-day validation notice pursuant to § 1692g of the FDCPA, only the RESPA Notice of Transfer of Servicing described above. *Id.*

62. On April 28, 2014, within 30 days of Nationstar's initial communication (the RESPA Notice of Transfer), Delaney made a dispute over the phone to Nationstar to recognize her loan modification, and disputing the alleged default and amount due on the subject loan.

63. On May 2, 2014, Nationstar sent Delaney a letter acknowledging receipt of her April 28, 2014 dispute and promising a response within 30 days.

64. Nationstar never provided any other response to Delaney's April 28, 2013 dispute letter, but continued its collection efforts without validating the subject debt pursuant to § 1692g of the FDCPA.

65. Nationstar never responded to Delaney's § 1692g dispute nor validated the debt under the FDPCA in response to Delaney's FDCPA dispute letter. Instead, Nationstar continued to seek to collect the subject debt from Delaney through statements and phone calls.

66. Nationstar continued to ignore the PPP and treat the loan as a debt in default.

67. Due to the purported default, on October 3, 2014, defendant Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2005-16xs ("Structured") filed foreclosure against Delaney and the subject property in the case known as *Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2005-16XS, U.S. Bank, N.A., as Trustee v. Helen Delaney, et al.*, Case No. 14 CH 01967 (Lake County).

68. On October 9, 2014, Delaney was served with the foreclosure complaint. This was the first time that Delaney received notice that Structured was the purported owner/creditor of the subject loan.

69. After the foreclosure was filed, again Nationstar solicited Delaney to apply for a loan modification under HAMP. In reliance upon Nationstar's representations and in hopes that Nationstar would finally implement the terms of her original PPP, Delaney sent in all of the requested documents to Nationstar.

70. However, during the two years following Delaney's execution of her PPP and Defendants' breach of Delaney's PPP, interest, fees, and costs accrued on the subject loan. Nationstar added the accrued interest, fees and costs to the principal owed.

71. The accrued interest, fees, and costs were not tolled nor waived throughout the loan application process as required by HAMP.

72. Therefore, not only did Nationstar refuse to honor the original, binding PPP, but due to a failure to toll the accrued interest during the dispute period as required by HAMP, on January 13, 2015, Nationstar offered Delaney a HAMP loan modification with payments *double* their original PPP payment amount. *See* Exhibit O attached hereto is a true copy of the January 13, 2015 offer.

73. As a result of SLS and Nationstar's mishandling Delaney's modification, Delaney has been denied options and the benefits of loan modification payments under HAMP.

74. Delaney has been damaged as a result. She has never been able to receive the benefit of a loan modification that she was previously approved for, and made approximately $10,000.00 in payments on. Nor was she reevaluated for any subsequent loan modification in good faith or in accordance with HAMP guidelines and directives.

10

75. Delaney would not have made the TPP payments had she known that Defendants would not honor the loan modification.

76. Defendants' misconduct has led to Delaney moving out of her family home because she felt that there was no only choice. Delaney has incurred moving and relocation expenses.

77. Even though Delaney had a binding loan modification that she made payments on, due to the actions of Defendants, Delaney gave up her home.

78. Defendants profited from approximately $10,000.00 in Delaney's loan modification payments on a contract that Defendants refused to honor. Regardless, Defendants' attempts to unfairly profit off of Delaney continue with the filing of the foreclosure and the request for a personal deficiency against Delaney in the foreclosure action.

79. To this day, Nationstar continues to represent that Delaney owes under the original loan terms, and refuses to honor her PPP. Nationstar continues to assess late fees, accrued interest, property preservation fees, and other fees and costs associated with the purported default.

80. Nationstar has continued to send Delaney monthly statements that ignore Delaney's binding PPP to this day.

81. As recent as April 1, 2015, Nationstar sent Delaney a statement that she owed a (a) regular monthly payment of $1,920.69, (b) $47,711.37 in arrearages, and (c) an interest bearing principal balance of $231,792.11. *See* Exhibit P attached hereto is a true copy of the April 1, 2015 statement.

**CAUSES OF ACTION**

82. All of Defendants' actions are the proximate cause of damages to Delaney that include illegal fees, charges, interest, loss of her home, emotional distress, physical illness and injury, pain and suffering, damage to reputation, and the loss of funds that SLS and Nationstar misapplied to Delaney's account.

83. Delaney restates each and every allegation stated herein, including the allegation of damages in paragraph 82, as if fully alleged in each count of this complaint.

**COUNT I – BREACH OF CONTRACT**
**(AGAINST ALL DEFENDANTS)**

84. Delaney had a valid and enforceable mortgage contract with SLS as the servicer of the subject loan through approximately April 1, 2014. Delaney has a valid and enforceable mortgage contract with Nationstar through the date of this complaint. Nationstar is liable to Delaney for the actions of SLS as the assignee of the contract from SLS. Delaney has a valid and enforceable mortgage contract with Structured as the creditor of the mortgage loan. Structured is liable to Delaney for the actions of its servicers.

85. Delaney fully performed her duties under the contract by tendering her monthly payments and by complying with all other terms of the TPP and PPP.

86. Delaney complied with all terms of the mortgage contract from the point of origination of the TPP and PPP. Delaney made all required payments under the TPP and PPP.

87. Upon the transfer of servicing, SLS and Nationstar deducted amounts for unearned fees and costs before applying Delaney's payments to principal, interest, and escrow under the terms of her binding loan modification.

88. SLS and Nationstar misapplied Delaney's payments, placed Delaney's payments into a suspense account, and failed to properly allocate her payments to principal, interest, and escrow in violation of the loan modification contract.

89. Delaney requested that SLS and Nationstar properly apply her payments to account for the binding loan modification, but her oral and written requests were refused.

90. After entering into a binding loan modification, SLS and Nationstar assessed penalties, increased Delaney's monthly payment amount, increased her principal balance, and recorded her loan as past due.

91. SLS and Nationstar are in further material breach of contract for their:

  a. failure to credit and apply Delaney's payments as required by the loan modification;

  b. assessment of unauthorized late fees, legal fees, and costs;

  c. conversion of escrow funds to unauthorized fees and costs;

  d. failure to apply payments to interest and principal before escrow and fees;

  e. failure to provide accurate repayment and "reinstatement" figures;

  f. failure to accurately respond to Delaney's correspondence and other disputes;

  g. failure to conduct their affairs in good faith; and

  h. threatening and filing foreclosure with a request for personal deficiency.

92. SLS and Nationstar are in further material breach of the contract for violating RESPA § 2609 by:

  i. failing to properly fund Delaney's escrow after the loan modification effective date;

  ii. failing to send an annual escrow statement upon the effective date of the loan modification;

  iii. assessing fees against Delaney without conducting a complete and accurate annual account analysis or providing prior notice;

  iv. demanding payments that significantly exceeded the actual amount owed;

     v.   overcharging Delaney for late fees and costs; and

     vi.   deducting amounts for unrelated and improper fees and costs.

93. Any payment default by Delaney subsequent to the aforementioned conduct (a) occurred after SLS (and Nationstar as assignee) breached the subject loan modification and while Delaney had fully performed under the contractual terms, and (b) after Delaney induced by SLS and Nationstar through their failure to properly account for Delaney's payments.

94. As pled in paragraphs 82, Delaney was damages as a result.

WHEREFORE, Plaintiffs HELEN AND THOMAS DELANEY respectfully request that this Honorable Court:

    a.   find that Defendants materially breached the mortgage contract;

    b.   award Delaney their actual damages to be proven at trial;

    c.   award Delaney their reasonable attorney fees and costs; and

    d.   award Delaney their other relief this Honorable Court deems equitable and just.

**COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (AGAINST SLS AND NATIONSTAR)**

95. The subject loan is a "federally related mortgage" under RESPA. *See* Exhibit A.

96. SLS and Nationstar (collectively the "Servicers") each qualify as a "servicer" under RESPA § 2605(i)(2).

**a.  Failure to Disclose Transfer of Servicing (SLS)**

97.  SLS violated RESPA § 2605(b)(1) by failing to send Delaney the required notice of transfer of servicing.

98.   SLS violated RESPA § 2605(b)(3) by never sending Delaney a notice of transfer of servicing.

99.   SLS violated RESPA § 2605(b)(2) by failing to send Delaney the required notice of transfer of servicing not less than 15 days before the effective date of transfer.

14

**b. Failure to Acknowledge Receipt of QWR within 5 days (SLS)**

100.  SLS violated RESPA § 2605(e)(1)(A) by failing to timely acknowledge receipt of Delaney's QWR addressing the application of payments, failure to recognize the loan modification, failure to properly account for loan modification payments, the assessment of illegal fees, increased principal balance, and the mishandling of the account and loan modification.

101.  SLS violated RESPA § 2605(e)(3)(A) by failing to acknowledge receipt of Delaney's QWR within 5 days.

**c. Failure to Take Required Action Within 30 days of Receipt of QWR (SLS)**

102.  SLS failed to timely respond to or conduct a reasonable investigation in response to Delaney's QWR and requests for information in violation of RESPA § 2605(e)(2).

103.  SLS violated RESPA § 2605(e)(2) by failing to respond to Delaney's QWR.

104.  SLS violated RESPA § 2605(e)(2) by failing to respond to Delaney's QWR by making appropriate corrections to  Delaney's account, or conducting an investigation and providing statement of reasons why the servicing was correct or the information is unavailable.

105.  SLS violated RESPA § 2605(e)(2) by failing to respond to Delaney's QWR by making appropriate corrections to Delaney's account, or conducting an investigation and providing statement of reasons why the servicing was correct or the information is unavailable.

106.  SLS violated RESPA by failing to correct Delaney's account within 30 days of receiving a letter disputing the servicing in violation of RESPA § 2605(e)(2)(A).

**d. Reporting to Credit Bureaus (SLS)**

107. SLS violated RESPA by reporting negatively to credit bureaus during the 60-day period beginning on the date of the receipt of Delaney's QWR.

108. Delaney suffered additional damages from violations of RESPA § 2605 in the amount of the wrongful charges assessed against her loan, which she was forced to pay. Delaney has not been reimbursed for these charges by the Servicers.

109. Delaney suffered additional damages from SLS's violation of RESPA, including those alleged in paragraphs 82 above.

**e.   Failure to Account For Payments During 60-day Transfer Period (Nationstar)**

110.  Nationstar violated RESPA § 2605 when it treated Delaney's payments as late and imposed a late fee for payments made during the 60 days of obtaining servicing rights on April 1, 2014.

111.  Nationstar violated  RESPA § 2605(d) when it failed to properly credit payments made during the 60-day transfer period.

112.  Nationstar violated  RESPA § 2605(d) when it imposed late fees for payments that Delaney made to SLS during the 60-day transfer period.

113. Delaney suffered additional damages from Nationstar's violation of RESPA, including those alleged in paragraphs 82 above.

WHEREFORE, Plaintiffs HELEN AND THOMAS DELANEY request that this Honorable Court:

> a.  grant judgment in their favor and against SLS and Nationstar;
>
> b.  declare SLS and Nationstar's perpetual conduct to be a violation of RESPA;
>
> c.  award Delaney actual and additional damages pursuant to RESPA § 2605;
>
> d.  award Delaney reasonable attorney fees and costs pursuant to RESPA § 2605(f); and
>
> e.  award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST NATIONSTAR)

114. Delaney is a "consumer" as defined by FDCPA § 1692a(3).

115. The subject debt and the unauthorized fees and costs qualify as a "debts" as defined by FDCPA § 1692a(5) as they arise out of a transaction for personal, family, or household purposes.

116. Leading up to and upon transfer of servicing from SLS to Nationstar, Nationstar treated the mortgage loan as if it was in default and tried to collect an inflated principal balance, late fees, and unearned fees and costs from Delaney.

117. Nationstar qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

118. Nationstar qualifies as a "debt collector" because it treated the subject loan as if it was in default when it acquired rights to the subject loan.

### a. Violation of § 1692g(a)

119. After Nationstar initially communicated with Delaney on April 14, 2014, Nationstar was required to send Delaney a 30-day validation notice within five days.

120. Nationstar failed to send a proper validation notice within five days of the initial communication with Delaney in violation § 1692g(a).

### b. Violation of § 1692g(b)

121. After Nationstar initially communicated with Delaney on April 14, 2014, Delaney orally disputed the debt on April 28, 2014, triggering Nationstar's duty to verify the debt or cease collection actions.

122. After acknowledging Delaney's debt dispute, Nationstar failed to verify the debt or cease collection activities. Instead, Nationstar continued collection efforts after receiving Delaney's dispute in violation of § 1692g(b).

17

### c.  Violation of  § 1692d

123.   Nationstar engaged in abusive and oppressive conduct in violation of FDCPA § 1692d through (i) improper mismanagement of the subject loan account; (ii) refusal to correct its accounting errors or adequately respond to Delaney's repeated disputes; (iii) refusal to acknowledge the express terms of the subject mortgage and loan modification contract; (iv) refusal to correct the principal balance; (v) misapplication of Delaney's payments without providing sufficient notice or reason; (vi) assessment of illegal fees; (vii) forcing Delaney to pay the wrongful fees; (viii) repeatedly calling Delaney to collect the subject loan debt; and (ix) threatening foreclosure to collect substantially more than the amount owed.

### d.  Violation of § 1692e

124.   Nationstar's actions were unfair, unconscionable, false and deceptive under FDCPA §§ 1692e as a result of its (i) misrepresentations of the status of the debt;  (ii) attempts to collect illegal fees and costs not authorized by law or contract; (iii) misrepresentation of the amounts owed to cure the "default;" (iv) declaring the loan in delinquent or default status when Delaney had complied with terms of the contract; (v) assessment of illegal fees and corporate advances against Delaney; and (vi) threatening and initiating foreclosure prior to verifying the subject debt.

### e. Violation of § 1692f

125.   It was unfair and unconsionable for Nationstar to misrepresent the debt by lumping its fees, unauthorized corporate advances, and costs in with the principal debt obligation, and seeking payment of amounts that were not authorized by the mortgage contract or the loan modification or permitted by law in violation of FDCPA § 1692f.

126. Delaney suffered additional damages from Nationstar's violation of the FDCPA, including those alleged in paragraphs 82 above.

WHEREFORE, Plaintiffs HELEN AND THOMAS DELANEY request that this Honorable Court:

   a. enter judgment in their favor and against Nationstar;

   b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   c. award Delaney statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

   d. award Delaney costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and

   e. award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (SLS AND NATIONSTAR)

127. Delaney meets the ICFA definition of "consumer" and "person." *See* 810 ILCS 505/1.

128. The Servicers violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

#### a. Unfairness

129. Delaney's inquiries and disputes regarding the servicing of her loan were never investigated nor adequately answered; the lack of clarity from the Servicers resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of the mortgage loan. This never-ending battle lasted over two years.

130. The Servicers' conduct in relation to Delaney's loan was willful, malicious, unfair, arbitrary, and designed to place Delaney's account in a perpetual state of "default."

131. The Servicers' failure to abide by HAMP guidelines and directives for the evaluation, formation, and servicing of Delaney's HAMP loan modification was unfair.

19

132. It was unfair for the Servicers to deny Delaney's permanent loan modification (PPP) after she had made all trial period payments (TPP) on time and in full in accordance with HAMP.

133. It was unfair for the Servicers to deny Delaney the benefit of her permanent HAMP loan modification after she made all loan modification payments and submitted all loan modification paperwork as required under HAMP.

134. It was unfair for the Servicers to induce payment from Delaney without the intention of ever honoring the PPP.

135. Delaney would not have made approximately $10,000.00 in loan modification payments had she not been promised a loan modification from SLS.

136. The Servicers' conduct offends public policy as it demonstrates an industry-wide of ignoring binding loan modification, refusing to cooperate with HAMP, charging unearned fees and costs to a borrower in order to make a profit, forcing borrowers to make monthly payments without properly crediting the payments, and by profiting off of a borrower's good faith payments.

137. The Servicers' actions caused substantial injury to Delaney and to consumers generally, as Delaney and consumers reasonably expect their HAMP loan modifications to be honored, their loans and accounts to be properly managed, and their payments properly applied.

138. Delaney could not avoid these immoral undertakings because the Servicers would not accurately communicate with her in response to her phone calls, letters, and other objections.

139. When taken as a whole over several years, the Servicers' conduct was so unethical and unending, that Delaney had no choice but to submit and leave her home in reliance on the Servicers' misconduct.

### b. Deception

140.  The Servicers' following actions were deceptive: (i) attempting to collect upon and threatening to foreclose upon a debt without verifying the amount owed; (ii) sending disclosures, statements, and notices that included unauthorized or unearned costs and fees; (iii) making material misrepresentations of fact regarding the status of the subject loan, the payment history, whether Delaney could save her home through a loan modification, and the amounts actually owed; (iv) overcharging Delaney's account in late fees and other costs not authorized by the contract or law; (v) providing conflicting disclosures to Delaney; (vi) accelerating the debt and threatening foreclosure without responding to Delaney's disputes, and (vii) employing communications with Delaney that were confusing and specifically designed to deceive Delaney so she could not decipher the true statements from the deceptive statements.

141.  The Servicers unilaterally increased Delaney's principal balance, altered the terms of the PPP, failed to properly credit the payments pursuant to the PPP.

142.  It was deceptive for the Servicers to induce Delaney into making payments without ever intending to honor the PPP.

143.  It was deceptive for SLS to send Delaney a PPP cover letter stating that she could accept the PPP offer "electronically," then provide a fax number on the same cover letter where to fax the documents, then reject the PPP on the basis that she was not permitted to fax the documentation in order to accept the offer.

144.  The Servicers deceived Delaney by advising her to stop making payments and reapply for a loan modification for the sole purpose of finding her in default to ultimately foreclose on her home.

### c. Misrepresentation

145.  In addition to the above conduct, the Servicers misrepresented the amounts due so Delaney could not understand why her payments were insufficient to bring the loan "current."

146.  Delaney relied on the amounts that the Servicers stated that she owed to her detriment.

147.  Delaney relied on the terms of the subject loan, by paying the amounts that she owed, only to be tricked into believing she was in "default."

148.  The Servicers misrepresented the status of the subject debt and tricked Delaney by intentionally keeping the account in a perpetual state of "default."

149.  The Servicers made material misrepresentations regarding the amounts due under the loan, amounts due for costs and fees, receipt of the loan modification, and how Delaney's payments were applied.

150.  SLS further misrepresented the manner in which Delaney could accept the PPP, i.e. via fax or mail.

151.  Due to the misrepresentations, Delaney was unable to determine why her payments were "insufficient" to bring the loan "current" and unable to determine the true amount owed.

152.  Delaney relied upon the misrepresentations that she would not be awarded the PPP by making approximately $10,000.00 in payments.

153.  The Servicers intended Delaney to rely on their deceptive and unfair acts and their misrepresentations, and Delaney did in fact rely on the Servicers' deceptive and unfair acts to her detriment by believing that she had lost her loan modification and moving out of the home to a new residence several states away.

154.  The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce.

155. Delaney suffered additional damages from the Servicers' unfair and deceptive conduct, including those alleged in paragraphs 82 above.

156. Punitive damages are warranted because the Servicers' conduct was outrageous, willful, wanton, showed reckless disregard for the rights of Delaney and consumers in general, and carried on for over two years.

WHEREFORE, Plaintiffs HELEN AND THOMAS DELANEY request that this Honorable Court:

    a.   enter judgment in their favor and against SLS and Nationstar;

    b.   declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    c.   award Delaney statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;

    d.   award Delaney costs and reasonable attorney fees under 815 ILCS 505/10a(c); and

    e.   award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATION OF THE TRUTH IN LENDING ACT
### (AGAINST STRUCTURED)

#### a. Violation of § 1641(g)

157. Structured and the Servicers failed to send Delaney a notice that Structured was the new creditor for the subject loan within 30 days after the mortgage loan was sold or transferred as required by TILA, 15 U.S.C. § 1641(g).

158. On October 10, 2013, SLS sent Delaney a notice that it was the owner/creditor of the subject loan. *See* Exhibit C at p. 2.

159. After October 10, 2023, Delaney never received a § 1641(g) Notice of New Creditor stating that Structured was the new owner/creditor of her loan.

160. Up until Delaney was served with the foreclosure complaint, she had only received notice that SLS was the creditor of the subject loan. She had never heard of Structured at any time before.

161. Neither Structured nor the Servicers provided notice of the sale or transfer of the master servicing and ownership of the debt within 30 days of the transfer as required by § 1641(g).

162. As a result, Delaney was unaware of who owned her loan, who to contact regarding her loan modification or improperly increased principal balance and payment amount, or who could ultimately resolve her never-ending dispute.

163. As a principal, Structured is liable for the acts of its agents, SLS and Nationstar.

164. As a result, Delaney was unaware of who owned her loan, who to contact regarding her increased principal balance and payment amount, or who could ultimately resolve her never-ending dispute.

### b. Violation of §1666d

165. Structured and the Servicers collected fees, costs, and charges in excess of that permitted by the mortgage contract as modified or permitted by law resulting in a credit balance in the subject loan account in excess of $1.

166. Delaney requested that the Servicers refund the credit balance but the Servicers refused. This resulted in unearned fees and finance charges withheld by and for the benefit of the Servicers and Structured, amounting to a violation of TILA § 1666d.

WHEREFORE, Plaintiffs HELEN AND THOMAS DELANEY request that this Honorable

Court:

a.  grant judgment in their favor and against Structured;

b.  declare Structured's conduct to be a violation of TILA;

c.  award Delaney actual, statutory and additional damages pursuant to TILA § 1640;

d.  award Delaney reasonable attorney fees and costs pursuant to TILA § 1640;

e.  award Delaney actual and additional damages pursuant to TILA § 1666d; and

f.  award any other relief this Honorable Court deems equitable and just

**Plaintiff demands trial by jury.**

Respectfully Submitted,

By: ___/s/Mara A. Baltabols____
**Mara A. Baltabols**
Attorney for Plaintiff

Mara A. Baltabols
ARDC # 6299033
Mohammed O. Badwan
ARDC # 6299011
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523